UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| KIRK O., <br><br> Plaintiff, <br><br> v. <br><br> NANCY A. BERRYHILL, Deputy Commissioner of Social Security Operations, <br><br> Defendant. | Case No. 3:17-cv-05844-TLF <br><br> ORDER AFFIRMING DEFENDANT'S DECISION TO DENY BENEFITS |

Kirk O. has brought this matter for judicial review of defendant's denial of his application for disability insurance benefits. The parties have consented to have this matter heard by the undersigned Magistrate Judge. 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73; Local Rule MJR 13. For the reasons set forth below, the undersigned affirms defendant's decision to deny benefits.

## FACTUAL AND PROCEDURAL HISTORY

On March 18, 2014, plaintiff filed an application for a period of disability and disability insurance benefits. Dkt. 6, Administrative Record (AR) 16. He alleged that he became disabled beginning January 1, 2014. The application was denied by the Social Security Administration on August 4, 2014, and reconsideration was denied on December 14, 2014. *Id.* A hearing was held before an administrative law judge ("ALJ"), at which plaintiff appeared and testified, as did a vocational expert. *Id.*

In a decision dated May 18, 2016, the ALJ found that plaintiff was not disabled. AR 26-27. Plaintiff's request for review was denied by the Appeals Council on August 21, 2017, making the ALJ's decision the final decision of the Commissioner. AR 1. Plaintiff appealed to this Court on October 20, 2017. Dkt. 1; 20 C.F.R. § 404.981.

In his May 2016 decision, the ALJ resolved steps one and two of the five-step sequential analysis in plaintiff's favor. AR 18. The ALJ found that the plaintiff had not engaged in substantial gainful activity since the alleged onset of his disability and that he had the following severe impairments: dysfunction of major joints, affective disorder (depression and bipolar disorder), and visual impairment with two cataract surgeries. *Id.* At step three, the ALJ found that the plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the impairments listed in the Social Security Administration's regulations. AR 19.

In assessing the plaintiff's residual functional capacity (RFC), the ALJ found that the plaintiff had the residual functional capacity (RFC)

> **to perform medium work as defined in 20 CFR 404.1567(c) except the claimant can frequently climb ladders, ropes, scaffolds, and crawl. The claimant is limited to pushing and pulling with the right upper extremity as much as he is able to lift and carry. The claimant can occasionally reach overhead with the left upper extremity. The claimant can perform simple, routine, and some complex tasks, but cannot perform detailed complex tasks on a routine basis. Additionally, the claimant is limited to simple work-related decisions with few workplace changes. The claimant is limited to superficial contact with the general public. The claimant should avoid concentrated exposure to work hazards. The claimant can perform jobs that would involve frequent near acuity.**

AR 21 (emphasis in original). Because of this assessment of the plaintiff's RFC, the ALJ found that the plaintiff was not disabled because there were a number of jobs that exist in significant numbers in the national economy that the plaintiff could perform. AR 26-27.

Plaintiff seeks reversal of the ALJ's decision and remand for an award of benefits. He alleges that the ALJ erred in discounting his subjective testimony and, consequently, in assessing his residual functional capacity and finding he can perform jobs existing in significant numbers in the national economy. Dkt. 11.

For the reasons set forth below, the Court finds that the ALJ did not err in assessing plaintiff's testimony, and therefore that he did not err in determining the plaintiff's residual functional capacity and that he is not disabled.

## DISCUSSION

The Court will uphold an ALJ's decision unless: (1) the decision is based on legal error; or (2) the decision is not supported by substantial evidence. *Revels v. Berryhill,* 874 F.3d 648, 654 (9th Cir. 2017). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Trevizo v. Berryhill*, 871 F.3d 664, 674 (9th Cir. 2017) (quoting *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988)). This requires "'more than a mere scintilla,'" though "'less than a preponderance'" of the evidence. *Id.* (quoting *Desrosiers*, 846 F.2d at 576).

The Court must consider the administrative record as a whole. *Garrison v. Colvin,* 759 F.3d 995, 1009 (9th Cir. 2014). The Court is required to weigh both the evidence that supports, and evidence that does not support, the ALJ's conclusion. *Id.* The Court may not affirm the decision of the ALJ for a reason upon which the ALJ did not rely. *Id.* Only the reasons identified by the ALJ are considered in the scope of the Court's review. *Id.*

"If the evidence admits of more than one rational interpretation," that decision must be upheld. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). That is, "[w]here there is conflicting evidence sufficient to support either outcome," the Court "must affirm the decision actually made." *Allen*, 749 F.2d at 579 (quoting *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971)).

The ALJ's Assessment of Plaintiff's Symptom Testimony

Plaintiff contends that the ALJ erred in discounting his subjective testimony.

Questions of credibility are solely within the control of the ALJ. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). The Court should not "second-guess" this credibility determination. *Allen v. Heckler*, 749 F.2d 577, 580 (9th Cir. 1984). In addition, the Court may not reverse a credibility determination where that determination is based on contradictory or ambiguous evidence. *See id.* at 579. Even if the reasons for discrediting a claimant's testimony are properly discounted, that does not render the ALJ's determination invalid as long as that determination is supported by substantial evidence. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001).

When gauging a plaintiff's credibility, an ALJ must engage in a two-step process. First, the ALJ must determine whether there is objective medical evidence of an underlying impairment that could reasonably be expected to produce some degree of the alleged symptoms. *Smolen v. Chater*, 80 F.3d 1273, 1281-82 (9th Cir. 1996). If the first step is satisfied, and provided there is no evidence of malingering, the second step allows the ALJ to reject the claimant's testimony of the severity of symptoms if the ALJ can provide specific findings and clear and convincing reasons for rejecting the claimant's testimony. *Id.* To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995) (citation omitted). The ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.*; *see also Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

Here, plaintiff testified that he could no longer work as an electrician because his eyesight was worsening and causing him to make mistakes. AR 40. He testified that he had ADHD since he was in school and that it affected his ability to prioritize and concentrate. AR 41.

He testified that although he had ADHD throughout his 35-year career, it had been getting worse. AR 42.

He said that he quit, rather than retire, because, "I was afraid of losing my job, 'cause of the reprimands, not following orders, and concentration and memory." AR 44. He said that he could not perform less demanding work because, "I'm just to[o] flaky. My memory's bad. I'm unorganized. I have trouble reading . . . [and] understanding." AR 44. He added that he is "not good with people, either." AR 45. He said that his pain was a 7 of 10 and, physically, he had good and bad days. AR 45-46. He said that his lower back, left shoulder, and right bicep muscle caused him pain, and that his bicep pain prevents him from "reach[ing] back or pick[ing] up] anything heavy." AR 46-47; *see* AR 214.

As discussed below, the ALJ addressed plaintiff's testimony about his mental health, physical condition, and vision problems. In each of these areas, the Court concludes that the ALJ gave clear and convincing reasons to discount plaintiff's testimony about the severity of his symptoms. *See* AR 22-25.

*Mental-Health Issues*

The ALJ acknowledged plaintiff's history of treatment for mental-health issues, including "multiple psychotropic medications for bipolar disorder, depression, and ADHD." AR 24-25. The ALJ reviewed plaintiff's treatment notes in detail. *Id.* He found that they contain unremarkable clinical observations and mental status examinations and indicate that plaintiff's mental health was generally stable. *Id.*; *see* AR 276-77, 280, 285 (bipolar and ADHD managed with medications), 294-96, 357-59.

The ALJ found that plaintiff's treatment notes contain subjective complaints and some clinical observations of problems with memory, focus, and concentration, and confirm that

plaintiff has "a history of depression, bipolar disorder and ADHD." *Id.*; *see* AR 285, 294, 483, 488. But, the ALJ concluded, the latter conditions "are well-managed by medication and do not preclude [plaintiff's] ability to perform unskilled work." AR 25.

Regarding a provider's observation of significant memory impairment, the ALJ found that "this limitation is inconsistent with the prior benign mental status examinations, stable condition, and effective psychotropic medications the treatment notes consistently documented." *See* AR 487-88. The ALJ thus found that "limited routine mental health treatment" has helped plaintiff's mental symptoms. AR 25.

The ALJ further noted the relatively conservative treatment plaintiff has received -- noting that plaintiff has not had psychiatric counseling or therapy, or emergency room treatment, and has not been hospitalized. He also observed that although plaintiff was prescribed medications by 2010, he still performed a skilled job through 2013.[1] AR 25.

With respect to plaintiff's ADHD, the ALJ noted that plaintiff worked "for decades" as an electrician before stopping in December 2013. AR 22. He reasoned that if plaintiff "had been suffering from severe ADHD symptoms, he would not have been able to perform such a mentally demanding skilled job." *Id.*

Finally, the ALJ found that plaintiff stopped working for reasons unrelated to his impairments: the ALJ noted that plaintiff told providers he stopped working in January 2014 because he retired and found that this "implies that any medical reasons were not primary in his mind." AR 22; *see* 278, 357, 482. The ALJ found it "[m]ore telling," however, that plaintiff "had no medically documented physical trauma, severe exacerbation, or rapidly progressive medical condition at the end of 2013" that could have caused his retirement. AR 22.

---

[1] The ALJ wrote "2014," but this appears to be a typo as plaintiff retired in December 2013. *See* AR 39.

ORDER AFFIRMING DEFENDANT'S DECISION TO
DENY BENEFITS - 6

Plaintiff contends that because the ALJ failed to acknowledge "the medical provider's notes of increasing difficulty in activities from 2013 on forward," the record does not support the ALJ's findings that "his mental issues are controlled and he had worked despite them." Dkt. 11, p. 6. He then lists numerous items from the medical record that pertain to each of his conditions, mental and physical. Dkt. 11, pp. 6-8. These include many records that the ALJ acknowledged, such as a mental status exam showing blunted affect, fair insight and judgment, and reported difficulties in concentration and focus, a 2013 refractory diagnosis, self-reported vertigo as a side effect of medication, and x-ray results showing "a right scoliotic curve in the upper dorsal region." AR 23-24; *see* 279, 295-96, 530, 536.

Plaintiff asserts that the ALJ's emphasis on "whether the diagnostic tests showed dramatic issues that would require surgery or some dramatic procedure is misplaced" because "[t]he ALJ is not a doctor." Dkt. 11, p. 8. He further asserts: "No doctor questioned Plaintiff's difficulty with concentration, his dizziness, his report of pain. Only the ALJ does." *Id.*

Plaintiff's arguments are misplaced. A social-security claimant has the burden of proof in the first four steps of the five-step evaluation process. 20 C.F.R. § 404.1529(a)(1); *Tackett v. Apfel*, 180 F.3d 1094, 1098 & n.3 (9th Cir. 1999) (observing that "the application of burdens of proof is particularly elusive in cases involving social security benefits, in part because the proceedings are not designed to be adversarial" [internal quotation marks omitted]). The ALJ, not plaintiff's doctors, was tasked with determining what weight to give his subjective testimony about the severity of his symptoms. 20 C.F.R. § 404.1529(c).

Although plaintiff asks the Court to infer that his medical providers credited his reported limitations, and to further find that those limitations amounted to disability, the record contains

no opinions from those providers about functional limitations. Plaintiff does not identify an error of law in the ALJ's consideration of his medical records.

Moreover, the ALJ could properly infer the level of concern plaintiff's providers have about his conditions—and what this says about those conditions' severity and impact on his ability to perform work functions—from the treatment they prescribed. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008); *see also Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) (upholding ALJ finding that claimant's testimony "that she experienced pain approaching the highest level imaginable was inconsistent with the 'minimal, conservative treatment' that she received"). In particular, the ALJ could reasonably infer from plaintiff's conservative mental-health treatment that his affective disorders were not as severe as plaintiff alleged. AR 24-25. Substantial evidence supports that inference here. *See* AR 276-77, 280, 285, 296, 488.

The record likewise supports the ALJ's findings that plaintiff was consistently assessed to have stable mental health and that his mental-health providers found his medications were effective; he did not pursue more aggressive treatment. *See* AR 276-77, 280, 285, 296. These, too, are valid reasons to discount plaintiff's subjective statements. *See* 20 C.F.R. § 404.1529(c)(3); *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).

Finally, plaintiff's ability to perform highly skilled work for decades is a clear and convincing reason to discount his testimony about limitations due to ADHD, which he testified that he suffered from since childhood. AR 41; *see Gregory v. Bowen*, 844 F.2d 664, 666-67 (9th Cir. 1988) ("Furthermore, substantial evidence indicated that the condition of Gregory's back had remained constant for a number of years and that her back problems had not prevented her from working over that time.").

Plaintiff's ability to perform that work for at least three years after receiving treatment for his affective disorders, without significant deterioration in that time, also supports the ALJ's decision to discount his testimony about the severity of those conditions. *See* AR 25, 52. Plaintiff contends that the ALJ erred in relying on a finding that he "retired" rather than quitting due to his medical impairments. Substantial evidence supports the ALJ's finding that plaintiff stopped working for non-disability reasons – the contemporary record is from a doctor's visit notes: "Reports that he retired this past Friday. Wasn't really ready, but was frustrated with company changes and a contract negotiation was coming up, so it seemed like the right time. He says they didn't 'allow you to feel successful.'" AR 278.

Plaintiff contends primarily that the ALJ should have inferred -- from the fact that he was making a lot of money before he stopped working – the plaintiff would not have retired unless his impairments made him do so. Dkt. 11, pp. 5-6. The Court finds no basis for such an inference, which is entirely speculative.

Plaintiff also argues that the ALJ could not rely on these treatment notes because they may not be the plaintiff's exact words, but rather a doctor's notes recounting plaintiff's words. Dkt. 11, p. 5. The Court is aware of no such standard for evidence in a social-security appeal. Finally, plaintiff contends that the ALJ should have discussed a note from April 2014 stating, "Continues in retirement, but is also applying for disability, due to his age and his issues with the dizzy spells which limit his ability to work safely in his field." AR 294. The ALJ did not err in relying on plaintiff's contemporary report rather than an explanation he gave several months later to explain his application for disability benefits. *See Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (ALJ not required to discuss every item of

evidence, only to "explain why significant probative evidence has been rejected" [internal quotation marks omitted]).

*Physical Conditions*

In the RFC, the ALJ limited plaintiff to medium work with additional limitations including, among others, only occasional overhead reaching. AR 21. But the ALJ found that plaintiff's medical records undermined his complaints about more severe pain and more limiting physical impairments. AR 23.

The ALJ reviewed results of physical examinations and x-ray imaging. AR 23. These showed that plaintiff has been seen for complaints of back and shoulder pain, and that exams have resulted in a diagnosis of left shoulder tendinitis. AR 334. Notes from physical therapy for his shoulder observed that he was limited in his activities but had a "good" prognosis, and observed improvement in subsequent visits. AR 344, 348, 350-51. Likewise, other treatment notes showed that plaintiff had received chiropractic treatment for neck and spine problems and that these had shown improvement. AR 515, 518. The ALJ observed that a CT scan had shown "multilevel degenerative disc and spondylitic change in the lower cervical region" of the neck "but revealed no acute disease." AR 23, 537.

The ALJ further noted the "limited and routine treatment" that plaintiff received for major joint dysfunction, including "brief chiropractic and physical therapy treatment." AR 23. The ALJ noted that plaintiff's treatment did not include injections, regular narcotic pain medications, visits to a pain doctor, pain management, or surgical intervention. The ALJ found that this conservative treatment contradicted plaintiff's testimony that his pain was a 7 of 10. *Id.*

With respect to plaintiff's torn bicep tendon, the ALJ noted that plaintiff saw a doctor for a right bicep tear and "was advised to use ice and Ibuprofen" and "that the symptom would not limit his function and [he] should return as needed." AR 23; *see* AR 427.

An ALJ may discount a claimant's pain testimony based on a record of conservative treatment. *Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) (upholding ALJ finding that claimant's testimony "that she experienced pain approaching the highest level imaginable was inconsistent with the 'minimal, conservative treatment' that she received"). The record again supports the ALJ's finding to that effect here, as it contains no indication that plaintiff visited a pain doctor, received pain management, was prescribed injections, narcotics, or was recommended surgical intervention.

Further, determining that a claimant's complaints are "inconsistent with clinical observations" may satisfy the clear and convincing requirement. *Regennitter v. Commissioner of Social Sec. Admin.*, 166 F.3d 1294, 1297 (9th Cir. 1999). A claimant's pain testimony may not be rejected "solely because the degree of pain alleged is not supported by objective medical evidence," however. *Orteza v. Shalala*, 50 F.3d 748, 749-50 (9th Cir. 1995). Here, the ALJ properly considered objective medical results including clinical exams, chest x-rays, and a CT scan of the cervical spine as part of his evaluation of plaintiff's testimony. AR 335, 536-37; *see* 20 C.F.R. § 404.1529(c).

As discussed above, plaintiff bases his challenge to the ALJ's decision on a list of treatment notes and argues the ALJ misinterpreted the medical record. Dkt. 11, pp. 6-8. But the ALJ was not required to interpret plaintiff's treatment notes in the way plaintiff desires – the Court will uphold the ALJ's decision as long as it is free of legal error and substantial evidence supports it. *See Allen*, 749 F.2d at 579. (The Court notes that, as with plaintiff's mental health

conditions, the record does not include any medical source opinion on how plaintiff's physical conditions would limit his functioning.) Substantial evidence supports the ALJ's reasoning with respect to plaintiff's physical-symptom testimony, and plaintiff identifies no legal error. Accordingly, the Court must uphold the ALJ's decision with respect to plaintiff's physical limitations.

*Vision Problems*

The ALJ found that plaintiff's treatment notes show only "minor vision problems." AR 23-24. He recounted plaintiff's recent history of treatment for vision problems, which include diagnoses of refraction disorder and cataracts, for which plaintiff had surgery in May and July 2015. AR 320, 412-13, 441-42. He noted plaintiff was prescribed new glasses. AR 461 (October 2015). The ALJ noted that despite recent reports of blurriness, "the record does not reflect best-corrected visual acuity of 20-200 or less." AR 24.

The ALJ also observed that plaintiff continues to drive, watch television, and read "throughout the day"—activities he found "indicative of well-functioning vision." AR 24. The ALJ stated, "[n]onetheless, I have considered the claimant's history of refraction and cataract and have restricted him to jobs that would require only frequent near visual acuity." *Id.*

In challenging the ALJ's interpretation of the medical record, plaintiff points out that he received surgery for his vision problems in May 2015. Dkt. 11, p. 8; *see* AR 258-59. The ALJ discussed this and other treatment for plaintiff's vision, AR 23-24, and plaintiff again does not identify any error in the ALJ's discussion of the medical records.

Plaintiff argues the ALJ erred in finding his ability to engage in "a wide array of activities" requiring good vision to discount his testimony about the severity of his vision problems. *See* AR 23-24. Plaintiff does not show harmful error, however: plaintiff testified that

his vision caused him to make mistakes in "read[ing] small numbers in cabinets next to a lot of wires" and in "skipping steps" when walking up or down stairs. AR 40. Yet the ALJ assessed that plaintiff's RFC would limit plaintiff to "jobs that would require only frequent near visual acuity." AR 24.

In the absence of any apparent contradiction between plaintiff's testimony and the RFC, or a medical source opinion about the severity of plaintiff's eyesight problems and their effect on his functioning, the Court lacks a basis for overturning the RFC. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (error is harmless where "it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination" [internal quotation marks omitted]).

With respect to all of plaintiff's health conditions—mental, physical, and visual—the ALJ gave clear and convincing reasons to discount plaintiff's testimony. Accordingly, the Court does not need to address whether the ALJ erred in finding that plaintiff's daily activities contradicted his testimony about the severity of those conditions.

## CONCLUSION

Based on the foregoing discussion, the undersigned finds the ALJ did not err in determining that plaintiff was not disabled. Defendant's decision to deny benefits is therefore AFFIRMED.

Dated this 3rd day of October, 2018.

Theresa L. Fricke
United States Magistrate Judge

ORDER AFFIRMING DEFENDANT'S DECISION TO
DENY BENEFITS - 13